**WISCOPE S.A., Petitioner,**

v.

**The COMMODITY FUTURES TRADING COMMISSION, Respondent.**

**No. 1098, Docket 79–4077.**

United States Court of Appeals, Second Circuit.

Argued May 4, 1979.

Decided Aug. 6, 1979.

Michael R. Klein, Washington, D. C. (Arthur F. Mathews, Lauren B. Homer, Wilmer, Cutler & Pickering, Washington, D. C., of counsel), for petitioner.

Richard A. Graham, Associate Gen. Counsel, Commodity Futures Trading Commission, Washington, D. C. (John G. Gaine, Gen. Counsel, Pat G. Nicolette, Gregory C. Glynn, Associates Gen. Counsel, Glynn L. Mays, Sp. Counsel, Paul M. Architzel, Nancy A. Petranto, Barbara L. B. Wierzynski, Attys., Commodity Futures Trading Commission, Washington, D. C., of counsel), for respondent.

Before GURFEIN and MESKILL, Circuit Judges, and WYZANSKI,* District Judge.

MESKILL, Circuit Judge:

This is a petition to review an order entered on March 19, 1979, by the Commodity Futures Trading Commission pursuant to § 6(b) of the Commodity Exchange Act, 7 U.S.C. § 9. The Commission ordered Wiscope S.A., a Swiss corporation trading in various physical commodities and commodity futures on international markets, to liquidate all of its open positions in commodity futures on United States markets by April 13, 1979.[1] The Commission also prohibited Wiscope S.A. from trading on those markets, and at the same time ordered those markets to refuse trading privileges to Wiscope S.A. and its agents (except for purposes of liquidation). In addition, the Commission prohibited Wiscope S.A. from reentering any contract market subject to the Commission's jurisdiction "until such time as [Wiscope S.A.] demonstrates to the satisfaction of the Commission that it can and will comply with Section 21.02 [17 C.F.R. § 21.02[2]] . . . and any other provi-

---

* Honorable Charles E. Wyzanski, Jr. of the United States District Court for the District of Massachusetts, sitting by designation.

1. This petition was originally filed in the United States Court of Appeals for the District of Columbia Circuit. That court stayed the effect of the Commission's order on March 19, 1979, but subsequently dismissed the petition on grounds of "lack of proper venue." 7 U.S.C. § 9. The stay was continued by this Court on April 3, 1979, pending disposition of the petition.

2. Special calls for information on open contracts in accounts carried by futures commission merchants, members of contract markets, and foreign brokers.

Upon special call by the Commission, each futures commission merchant, member of a contract market, or foreign broker, shall furnish to the Commission the following information for the commodity, contract market, and date specified in such call:

(a) The name, address, and principal occupation of all traders, including house accounts, holding open contracts on the records of such futures commission merchant, member of a contract market, or foreign broker;

sions of the Act or Commission regulations that require [Wiscope S.A.] to furnish information or reports to the Commission." For the reasons that follow, we grant the petition and set aside the order.

On November 3, 1978, Wiscope S.A. received the following request in a letter from a Commission staff member named Michael P. Charles, the letter having been mailed directly to Wiscope S.A.'s Switzerland office:

The Commodity Futures Trading Commission, at a meeting on October 30, 1978, authorized me to issue a special call for information pursuant to Section 21.02 of the Regulations under the Commodity Exchange Act. You are hereby called upon to furnish to the Commodity Futures Trading Commission the following information:

(a) The name, address and principal occupation of all traders, including house accounts, holding open contracts on your records in Coffee "C" futures on the New York Coffee & Sugar Exchange, Inc. as of November 2, November 16, and November 30, 1978.

(b) The number of open contracts owned or controlled by such traders in each future as of each of the above listed dates.

(c) The classification of such traders' open contracts as speculative, spreading (straddling) or hedging, or as "foreign broker" if such trader is another foreign broker.

The letter specified that the information for November 2 had to be forwarded no later than midnight November 10 and that the information for November 16 and 30 had to be forwarded no later than midnight of the 16th and the 30th. The letter closed with the following warning:

Please be advised that failure to comply with this special call will be considered a violation of the Commodity Exchange

Act and the regulations thereunder, and may lead to formal action which could result in the suspension or denial of your trading privileges.

One week later, Wiscope S.A. responded as follows:

We confirm that we act as a foreign broker for our clients on commodity futures markets, which information has already been advised to you on previous occasions.

You should be aware that this company is resident in Switzerland and is subject to the regulations and laws governing confidentiality and secrecy of our clients and their business. Unless we receive written authority from our clients we are not able to disclose any information about them or their positions with us.

We must inform you that our clients have instructed us to maintain this confidentiality, which means that we are unable to comply with your request for information on our clients['] positions with us.

Not satisfied with this response, the Commission, through Donald L. Tendrick, its executive director, telexed Wiscope S.A. to again request the information sought in Charles' November 3rd letter and to again relay the warning that failure to comply with the request would lead to enforcement proceedings. The next day, Wiscope S.A. responded in the following fashion:

We are attempting to obtain the consent of our clients to provide you with the information that you require. However at present we do not have the necessary consents from our clients to enable us to supply you with this information.

Accordingly we regret that we find ourselves unable to comply with your request as to do so would be a breach of the duty of confidentiality which we owe to our clients under the laws of Switzerland. We are advised that any disclosure concerning the affairs of our clients without

(b) The open contracts held or controlled by such traders in each future; and

(c) The classification of such traders' open contracts as speculative, spreading (strad-

dling), or hedging, or as "futures commission merchant" or "foreign broker," if such trader is another futures commission merchant or foreign broker.

their specific consent would be in breach of Article 162 of the Swiss criminal code and would make any person making such unauthorized disclosure subject to criminal proceedings under the provisions of the code referred to above.

Please be assured that we are making every effort to obtain for you the information your [sic] require and will revert as soon as we are able.

Within a week, the Commission issued a complaint against Wiscope S.A. charging it, *inter alia*, with violating 17 C.F.R. § 21.02 by failing to comply with a "special call." The hearing commenced on December 6, 1978, and concluded the next day. On December 14 the Administrative Law Judge recommended that Wiscope S.A. be found in violation of § 21.02, and on December 19 the record was certified to the Commission. Three months later the Commission, ruling that Wiscope S.A. had failed to respond adequately to a "special call," entered the order described above.

█ Petitioner's first claim is that there was not sufficient competent evidence to support the finding that a "special call" had in fact been authorized with regard to Wiscope S.A. An analysis of the record convinces us that petitioner is correct. Accordingly, we grant the petition for review and set aside the order.

The Commission's November 3rd letter to Wiscope S.A. indicated that at the meeting held on October 30, 1978, the Commission had authorized its staff to issue a "special call" to Wiscope S.A. The official minutes of that meeting, however, entitled "Minutes of the Surveillance Briefing of October 30, 1978," contain *only* the following:

The staff proposed that the Commission authorize a special call pursuant to section 21.02 of the regulations to require Pacol Ltd. and Wiscope Trading Ltd. to furnish to the Director of the Eastern Region all information specified under that regulation with respect to Coffee "C" futures on the New York Coffee and Sugar Exchange. The Commission voted 3 to 0 to approve this call (Commissioner Seevers, Dunn and Gartner voting).

The minutes, prepared by Commission staff economist John Mielke, contain no reference whatsoever to Wiscope S.A. The minutes mention only a separate, sister corporation by the name of Wiscope Trading Ltd., located in London, England. Wiscope S.A. argues that these minutes support the view that no "special call" *to Wiscope S.A.* had ever been authorized.

At the December 6th hearing, Mielke testified that "[o]n October 30th, 1978, . . . the Commission authorized that a special call be issued to Wiscope S.A. under Section 21[.]02 of the Regulations . . . ." When asked to explain why the minutes of that meeting referred only to Wiscope Trading Ltd., Mielke testified that as of the October 30th meeting the Commission's staff knew only that there were two separate entities whose title included the name "Wiscope" and that they were somehow related. He also testified that it had been the Commission's "full intention" to call for information from both entities. The Administrative Law Judge found this to be sufficient to support a finding that a "special call" had been issued to Wiscope S.A.

On January 26, 1979, well after the record had been certified by the Administrative Law Judge, the Commission, *sua sponte*, announced that it had discovered a tape recording of the October 30th meeting and had ordered a transcript made.[3] The Commission acknowledged that the transcript was "unquestionably, privileged material" and that "[u]nder normal circumstances, [it] simply would not place the transcript of the October 30 meeting, which,

---

3. The Commission's announcement explained that "[t]his tape must have been overlooked by the Division of Enforcement in its responses to Wiscope's requests for such material." The Commission also explained that the tape existed pursuant to the Government in the Sunshine Act, 5 U.S.C. § 552b, as implemented by Part 147 of the Commission's Rules, 17 C.F.R. § 147.1 *et seq.*

in its entirety, involved a discussion of highly sensitive market information and confidential information concerning Wiscope and other entities in the public domain." Nevertheless, "with great reluctance," it ordered an edited or "sanitized" version of the transcript made part of the public record, in order to evaluate Mielke's testimony at the hearing[4] and so that "the ends of justice" would be served. Having placed the transcript in the public record, the Commission then took "official notice" of its contents "for the purpose of determining whether the Commission authorized its staff to issue a special call for information upon Wiscope S.A." This "official notice" was taken pursuant to § 556(e) of the Administrative Procedure Act, 5 U.S.C. § 556(e),[5] and pursuant to 17 C.F.R. § 10.67(b).[6] Based on the information then before it, the Commission found that a "special call" had been issued to Wiscope S.A.,[7] and that the call had not been answered. In our judgment, the Commission in this instance failed to turn the "square corners" ordinarily required in matters as sensitive as those involved in this case. Cf. *Rock Island, Arkansas & Louisiana Railroad Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920).

■ By its very terms, the regulation provides that it is only "[u]pon special call by the Commission" that an entity is responsible for submitting requested information. The requirement that the Commission itself make this decision rather than its staff members, and that it be made with all appropriate formality, is fully justified. As is amply demonstrated by this case, these "special calls" require the disclosure of extremely sensitive information and carry with them drastic consequences for failure

---

4. In its January 26th order, the Commission suggested that "the entirety of Mielke's testimony may no longer be material in view of the tape recording." In its final decision, the Commission noted that "the testimony of Mielke, over which much concern has been voiced, is now of little import. . . . [W]e have not based our decision here in any material respect upon Mielke's testimony."

5. The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision in accordance with section 557 of this title and, on payment of lawfully prescribed costs, shall be made available to the parties. When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.

6. (b) *Official notice.* (1) Official notice may be taken of
   (i) Any material fact which might be judicially noticed by a district court of the United States; or
   (ii) Any matter in the public official records of the Commission.
   (2) If official notice is requested or taken of a material fact, any party, upon timely request, shall be afforded an opportunity to establish the contrary.

7. Because we believe that the Commission was not authorized to take "official notice" of the transcript, we need not describe its contents in detail. We do note, however, that the transcript would seem to support an *inference* that the Commission meant to issue a special call to both Wiscope Trading Ltd. and Wiscope S.A. James Goodwin, a member of the Commission's Office of Surveillance and Analysis, described to the Commission the "Wiscope in London" account and also referred to activity of "a Swiss affiliate of theirs." He said that Wiscope S.A. had identified itself as "commodity dealers" and that Wiscope Trading Ltd. had identified itself as being involved primarily in "commodity futures trading." Subsequent conversation related to "Wiscope," without reference to the specific entity being described. At the close of the meeting, the following conversation took place:
   MR. GARTNER: Just to make it clear we have authorized him to issue a call (inaudible).
   MR. SEEVERS: Does that require a formal vote?
   MR. IMEL: Well, the regulations do say the Commission will—special call is from the Commission, so I guess it would be convenient, if asked, that we did have the agreement of the Commission.
   MR. SEEVERS: Okay, state your recommendation for the Record.
   MR. GOODWIN: I recommend that a special call be issued to Pacol and to Wiscope for the purpose of our learning the ownership of positions being cleared in their names.
   MR. SEEVERS: Any further discussion? (No response.)
   MR. SEEVERS: Without objection, the recommendation is approved. You may proceed with the special call.

to answer satisfactorily. Here, proper formality is entirely lacking.

■ The official minutes of the October 30th meeting suggest that a "special call" was issued only to Wiscope Trading Ltd. The Commission subsequently declined to base its finding on these minutes however. It also declined to base its finding on the testimony of the minutes' author. Instead, the Commission based its finding on an inference based on the edited transcript of the October 30th meeting. But in our judgment, "official notice" should not have been taken of that transcript. It is clearly not a "material fact which might be judicially noticed by a district court of the United States." 17 C.F.R. § 10.67(b)(i). *See* Fed. R.Evid. 201(b). Nor do we think it fair to term the transcript "matter in the public official records of the Commission." 17 C.F.R. § 10.67(b)(ii). The effect of the Commission's maneuvering in this case is that an item that was otherwise not an "official public record" was made so solely in order for the Commission to "officially notice" it. As explained by the Commission itself, "the Commission first made the transcript public and then took official notice of it. Thus, at the time the Commission took official notice of the transcript, it was a public record for purposes of rule 10.67(b)." Brief at 58. This we find not only unacceptable but also well beyond the anticipation and intention of those who authored the rule.

For these reasons, we grant the petition and set the order aside.